[No. A039117. First Dist., Div. Three. Aug. 17, 1989.]

SONYA SOKOLOW et al., Plaintiffs and Appellants, v.
COUNTY OF SAN MATEO et al., Defendants and Respondent.

## COUNSEL

Lee Ann Huntington, Morgenstein & Jubelirer, Robert Rosenfeld, Heller, Ehrman, White & McAuliffe, Alan Schlosser and Richard M. Pearl for Plaintiffs and Appellants.

Anthony B. Leuin, Barbara W. Staman, Shartsis, Friese & Ginsburg and Judith Kurtz as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas F. Casey III, County Counsel, Mary K. Raftery, Deputy County Counsel, Robert R. Catalano and Catalano, Gates, Rosenblatt & Newman for Defendants and Respondents.

## OPINION

**MERRILL, J.**—Sonya Sokolow and Sidney Schieber appeal from an order denying their motion for attorney fees and costs incurred in prosecuting their sex discrimination lawsuit against respondents County of San Mateo (the County) and Leonard E. Cardoza, the Mounted Patrol of San Mateo County (the Patrol), and Jerry Williams. We have concluded that the denial of attorney fees must be reversed.

### I

As alleged in the amended complaint, the Patrol was formed in 1942 for the purpose of providing military support and civil defense during World War II. After the War, the Patrol continued in operation. According to the Patrol's Articles of Incorporation, its purposes include: "To form a *body of men* desiring to promote civil defense and for the primary purpose of patrolling, when necessary, the unincorporated areas of the County and more particularly those sections which are inaccessible by automobile and in which horses would be useful." (Italics added.) As stipulated by the bylaws

of the Patrol, the first qualification for any person seeking membership in the Patrol was that the person be "male."[1]

At some point in the 1970's, the sheriff's department developed a program for search and rescue operations in the County utilizing the coordinated services of seven organizations, including the Patrol. Each of these organizations was selected for its particularized skills useful in search and rescue.[2] Other than these organizations, the only resources called upon for search and rescue operations would be those of the sheriff's department itself and affiliated law enforcement groups in neighboring counties. Prior to this, County search and rescue operations were handled solely by on-duty, paid personnel of the sheriff's department, together with informal assistance from friends, relatives and local civilians.

Over the years, the Patrol developed a close relationship with the office of the San Mateo County Sheriff. Sheriff Brendan P. Maguire testified in deposition that although he had joined the sheriff's office in 1964, became a lieutenant in 1977, and then became Sheriff in January 1985, no one ever told him that the Patrol was not a public entity under the sheriff's department. He actually did not determine that the Patrol was a private organization until 1984 or 1985.

The intimate relationship between the sheriff's department and the Patrol was expressed in a wide variety of practical ways. In all of its literature, the Patrol presented itself as an arm of the sheriff's department. All applicants for membership in the Patrol, after being favorably passed by the Patrol's Membership Committee, were *required* to obtain clearance from the sheriff's department to qualify as "Deputy Sheriffs." After being cleared by the sheriff's department, and as part of his initiation into the Patrol, each new member of the Patrol was sworn in as a "Deputy Sheriff" of San Mateo

---

[1] Article I of the Patrol's bylaws, revised as of December 1976, stated: "The Patrol is organized and shall exist for *the association of gentlemen* desiring to promote and maintain law and order, and for the primary purpose of patrolling, when necessary, and in aid of the regularly constituted authorities, the unincorporated areas of the county, and more particularly, those sections which are inaccessible by automobile and in which horses would be useful, and to promote good horsemanship and fellowship amongst its members." (Italics added.) In October 1985, after this lawsuit was filed, the bylaws were revised to read as follows: "The Patrol is organized and shall exist for the association of gentlemen desiring to promote and maintain good horsemanship and fellowship amongst its members and to provide search and rescue assistance when necessary in the aid of the regularly constituted authorities in those areas of the county where horses would be useful."

[2] The seven groups were: the Patrol, the Sheriff's Air Squadron, Bay Area Mountain Rescue, the Reserve Emergency Services Unit, the Dive/Cliff Rescue Team, and two coeducational youth groups of Explorer Scouts specializing in law enforcement and emergency services. With the notable exception of the Patrol, each of these other organizations admits women.

County. According to the bylaws, a new member of the Patrol was "considered to have assumed by his oath and his acceptance of membership in the Patrol, the obligation to render to the Patrol *and to the Sheriff of the County of San Mateo,* when and as called upon, such assistance within the objectives, purpose and customs of the Patrol as may lie within his abilities." (Italics added.)

After being sworn in as a "Deputy Sheriff," a member of the Patrol was entitled to wear a distinctive "Deputy Sheriff" badge and to carry a card identifying him as a "Deputy Sheriff." The bylaws stated that the "nature and detail" of the badge and card and the "regulations concerning their use shall be as may, from time to time, be prescribed by the Sheriff of the County of San Mateo and the Board [of Directors of the Patrol]." Issuance of the identification card was handled almost entirely by the sheriff's office. Each Patrol member was photographed and fingerprinted by the sheriff's department; the identification card was then issued bearing the member's photograph and right index fingerprint, the signature of the Sheriff, a prominent legend identifying the member as a "Deputy Sheriff," and a statement that the card was the "Property of [the] San Mateo Sheriff's Office."

The badge and insignia of the Patrol consisted of a seven-pointed star reminiscent of a sheriff's badge, with the words "Mounted Patrol, San Mateo Co." and "Deputy Sheriff" surrounding an eagle.[3] The words "Deputy Sheriff" also appeared on programs, stationery, decals, signs and vehicles belonging to the Patrol. The "Commander in Chief" of the Patrol was the Sheriff of San Mateo County himself.[4] Patrol members wore windbreakers with the word "Sheriff" on the back, and had T-shirts bearing the "Deputy Sheriff" insignia.

The sheriff's office rendered numerous valuable services to the Patrol. When the Patrol needed to get "Deputy Sheriff" badges back from former members, the sheriff himself wrote letters to them on County stationery, demanding on behalf of "the Mounted Patrol of the San Mateo County Sheriffs [*sic*] office" that the former members return their badges. The sheriff's office trained Patrol members in search and rescue techniques; supplied the Patrol with jail inmates to perform up to 430 man-hours a week in public service work on the Patrol's private grounds under the Sheriff's correctional work program; and provided first aid teams, a first aid van, and salaried deputies for security, traffic and parking control at Patrol

---

[3] In 1985, apparently in response to the pendency of this lawsuit, the title of "Deputy Sheriff" for Patrol members was changed to "Special Deputy Sheriff." The identification cards issued to Patrol members were altered to reflect this change.

[4] Once again, in apparent response to the instant litigation, this was changed in 1985; the sheriff's title became "honorary Commander-in-Chief."

events. Sheriff's department personnel often attended Patrol meetings and outings in their official capacity; and they were paid by the County for doing so, including overtime pay when they attended such functions on off-duty hours.[5]

## II

In or about 1975, appellant Sokolow began making attempts to be admitted to the Patrol as a member. On or about May 18, she wrote a letter to John R. McDonald, Jr., at that time the county sheriff, inquiring about how she could join the Patrol. On May 23, Sheriff McDonald sent her a written reply stating that his position as "Commander-in-Chief" of the Patrol was an "honorary" position "due to [the Patrol's] traditional connection to the office of the Sheriff"; that the Patrol was a private nonprofit membership organization operating under its own bylaws; that "[t]he tradition built in to the . . . Patrol is for the office of the Sheriff to have an organized group that he may call on under the posse comitatus laws to assist him to maintain the peace of the county"; that nevertheless "[t]his office has no membership and no power to interfere with those rules and regulations that govern this organization"; and that "[s]ometimes there is confusion to the citizenry of which group is governed by the office of the Sheriff and which is a private organization." Sheriff McDonald suggested that Sokolow direct her inquiries regarding membership to the captain of the Patrol.

Thereafter, Sokolow engaged in an unsuccessful 10-year attempt to gain admission to the Patrol as a member. In July 1975, she asked the Patrol to rescind its bylaw restricting membership to males. In August 1975, the Patrol refused to do so. In July 1976, Sokolow again wrote to Sheriff McDonald, asking either that the sexually discriminatory bylaw be changed or that the sheriff's department dissociate itself from the Patrol. Neither action was taken. At about this same time, Sokolow again applied to the Patrol for membership. No response was made to her request.

In or about late 1982, Sokolow contacted newly-elected Sheriff Brendan Maguire, explaining her desire to join the Patrol and her unsuccessful

---

[5]The record is replete with examples of the kinds of services rendered by the County and the sheriff's department to the Patrol, as well as general references to the intimate relationship between the Patrol and the sheriff's department. The Patrol's newsletter, called the "Patrol News," featured frequent and regular mention of personal involvement of the Sheriff and other employees of the sheriff's department in the activities of the Patrol. For example, in a 1983 edition of the newsletter, the following excerpt from a letter by Patrol "First Lieutenant" Jerry Williams to Sheriff Brendan Maguire was printed: "On behalf of the Mounted Patrol, please accept my thanks and appreciation for the tremendous assistance from the work furlough group at the patrol grounds on Saturday, May 28, 1983. [¶] Without their participation it would have been virtually impossible to whip the facility into shape in time for the horse show. [¶] Please pass on our thanks to Sgt. Jerry Cohen and Deputy Ed Parson for their excellent assistance."

efforts to do so, and asking for his assistance. On or about June 27, 1983, Sheriff Maguire signed a statement acknowledging that he deputized the members of the Patrol; that the Patrol members carried identification cards with the sheriff's insignia, wore shirts with the insignia, carried badges, received training in search and rescue from salaried sheriff's deputies, "and in other ways act as deputies under color of the law"; that he was aware of Sokolow's past efforts to join the Patrol; that he was aware of the Patrol's "men only" membership restriction; that he had told Sokolow that he did not feel that his relationship with the Patrol was sufficiently "pervasive" to warrant his "interfering with its current procedures"; and that he had stated that he would not attempt to influence the membership policies of the Patrol in any way unless ordered to do so by a court.

Sokolow's letter to Sheriff Maguire concluded: "You could explain to [the member_ of the Patrol] that discrimination against women in [sic] legally prohibited as long as the Patrol's relationship with the Sheriff's office remains the same. Therefore, they either must change their by-laws to permit application from females or sever ties with the Sheriff, becoming a totally private organization. Only in the latter case would discrimination against women not be legally prohibited."

On or about June 4, 1984, Sokolow again made written requests to both the Sheriff and the Patrol asking that she be permitted to apply for membership and that the discriminatory membership restrictions be rescinded. Her requests were again denied or ignored. In August 1984, appellants filed suit against the County, the sheriff and the Patrol, seeking a declaration that the Patrol's bylaws restricting membership to men and excluding women was in violation of the equal protection clauses of the United States and California Constitutions; a preliminary and permanent injunction restraining the Patrol from excluding qualified women from Patrol membership; in the alternative, a preliminary and permanent injunction restraining the County and its agents "from maintaining any affiliation, either formal and [sic] informal, with the Mounted Patrol of San Mateo County"; and costs and reasonable attorney fees.

After extensive discovery, both sides filed motions for summary judgment. At the October 29, 1986, hearing on the motions, Sokolow made clear that the principal remedy she was seeking was an order requiring the Patrol to admit her as a member, which she greatly preferred to the alternative relief of an order requiring the County to cut all ties with the Patrol.[6]

[6] At the hearing, appellant's counsel stated: "If this Court finds that the equal protection clause of either the Federal or State Constitution has been violated, then Miss Sokolow is entitled to a remedy and I think the remedy you can give is [to] order her admission to the Patrol. We have asked for injunctive relief. There is nothing in the State Codes prohibiting that

On November 12, 1986, the trial court filed its memorandum of decision granting summary judgment to Sokolow. After enumerating the numerous ties between the sheriff and the Patrol, the decision stated: "It is clear to this court that the undisputed facts in and of themselves show significant involvement by the Sheriff's Department . . . sufficient to subject the . . . Patrol to the Equal Protection Clauses of the United States and California Constitutions. Where the private entity is so closely entwined with the governmental entity it will also be held to be acting under color of state law within the meaning of 42 U.S.C. Section 1983. [¶] . . . This court must find under the law established by the United States Supreme Court as early as 1961 that, so long as the governmental relationship exists, the . . . Patrol's bylaws limiting membership to males violates . . . Sokolow's constitutional rights . . . . In addition, so long as that relationship exists, the Patrol's males only membership policy also violates . . . Sokolow's rights under 42 U.S.C. Section 1983."

As a remedy, the trial court required the Patrol to "choose between its relationship with the Sheriff's Department . . . and its males only membership policy. If the . . . Patrol determines to amend its bylaws so as to afford women the opportunity for membership on the same terms and conditions available from time to time to all others it may continue its relationship with the Sheriff's Department. [¶] In the alternative, if the . . . Patrol chooses to maintain its male only membership requirements it and the Sheriff's Department must sever their relationship . . . ."

The trial court enumerated a variety of specific steps it was requiring the Patrol and the sheriff's office to take in order to sever the County's involvement in the Patrol. These steps focused on eliminating the Patrol's use of the terms "Deputy Sheriff" and "Special Deputy Sheriff" in their insignia,

---

type of injunctive relief and it is also given in the equal employment discrimination type of situation, and that's the remedy Miss Sokolow sincerely wants because she wants to join the Patrol. She has been trying to do that for 11 years and she is not doing this to make a point or cause trouble for the Patrol. She wants to join, and I think that given that we have shown that the Patrol and the County are violating her constitutional rights, she is entitled to the remedy of an injunction that she be admitted to the Patrol.

"THE COURT: What remedy would you suggest for, I guess, the County?

"Ms. HUNTINGTON [appellant's attorney]: If you give us the remedy that she is ordered into the Patrol, then I don't believe that we need any remedy against the County other than they abide by that ruling and honor it.

"THE COURT: Well, they say they are willing to honor and abide by anything the Patrol wants to do.

"Ms. HUNTINGTON: We have asked for alternative relief in the situation that your Honor is unwilling to do that. As I say, Miss Sokolow does not want the alternative relief. The alternative relief, you order all ties be cut in that situation. We need an injunction against the Sheriff. But as I say, the remedy that we truly want is that she be ordered admitted, and I think given the history here, that's what you should do."

badges, membership cards, decals, publications, uniforms, clothing, and so forth; as well as ending the Sheriff's practice of appointing Patrol members as "Deputy Sheriffs" or "Special Deputy Sheriffs" and issuing identification cards identifying them as such. On the other hand, the court specifically declined to enjoin the Sheriff from calling upon the Patrol for its services to conduct searches in rugged terrain where horses were required, or to enjoin the Sheriff from training members of the Patrol in first aid and other search and rescue skills. It stated: "In this court's view, the mere use of the . . . Patrol for search and rescue when lives are at stake does not create so close a governmental relationship as to invoke the constitutional guarantees of the United States and California Constitution absent the other indicias of governmental relationship specifically enjoined herein."

The Patrol chose to sever its relationship with the sheriff's department rather than admit women. Following a hearing, the trial court entered judgment for appellants in February 1987. The court found that there were sufficient "past connections" between the County and the Patrol to subject the Patrol to the requirements of the Equal Protection Clauses of the Federal and State Constitutions and of 42 United States Code Annotated section 1983, and that the Patrol's bylaws and practices restricting membership to men were unconstitutional and in violation of federal law; and it imposed permanent injunctions on the Patrol and the sheriff's department.

The Patrol was required to (1) cease describing itself as or giving the impression that it was an arm of, or in any way affiliated with, the sheriff's department, or that its members were agents of the sheriff's department; (2) cease from using in its insignia, badges, identification cards, decals, clothing, paraphernalia, equipment, stationery, documents "or anywhere else," the phrases "Deputy Sheriff," "Special Deputy Sheriff," or any other such words which could lead reasonable persons to believe or suspect that the Patrol or its members were agents or representatives of the sheriff's department; (3) surrender all identification cards marked "Deputy Sheriff" or "Special Deputy Sheriff" to the sheriff's office; (4) alter all Patrol badges to remove the words "Deputy Sheriff" or "Special Deputy Sheriff"; (5) remove the County seal insignia from patrol vans; (6) cease permitting the Sheriff or any members of the sheriff's department from serving or being described as "Commander-in-Chief," "honorary Commander-in-Chief," honorary member, or holding any other ceremonial or official capacity with the Patrol based on affiliation with the sheriff's department; and (7) formally amend its bylaws to conform to the requirements of the judgment.

The judgment in turn required the sheriff's department to (1) cease conferring on members of the Patrol the positions of "Deputy Sheriff," "Special Deputy Sheriff," or "any other position which would cause a reasonable

person to believe or suspect that the . . . Patrol or its members are agents or representatives of the Sheriff's Department"; (2) cease the issuance of identification cards to Patrol members identifying them as "Deputy Sheriffs," "Special Deputy Sheriffs," or anything else giving the impression that they are agents of the sheriff's department; (3) cease describing the Patrol in any way which would identify the Patrol or its members with the sheriff's department; (4) cease from participating in the Patrol in any ceremonial, honorary or official capacity, except insofar as employees of the sheriff's department do so in their capacity as private citizens rather than as members of the sheriff's department; (5) cease from providing crowd and vehicle control, medical support and other assistance at Patrol events held on the Patrol's private property, except insofar as such assistance and services are provided to other private organizations; (6) cease from providing any work program laborers for services on the Patrol's private property; and (7) cease from administering any oath to Patrol members.[7] Neither the County nor the Patrol has appealed the judgment.

Appellants moved for an award of attorney fees under 42 United States Code section 1988 and Code of Civil Procedure section 1021.5. On April 28, 1987, the trial court issued an order denying appellants' motion. The court stated that the "primary relief sought" by appellants was an injunction compelling the Patrol to admit Sokolow and other qualified women as members, and that the "secondary relief sought, in the alternative, was for an injunction prohibiting the County . . . from maintaining any affiliation, either formal or informal with the [Patrol]." The court went on to hold that appellants did not succeed in either of these goals; nor had any important right affecting the public interest been enforced or any significant benefit been conferred on the general public or a large class of persons, since the Patrol continued to maintain its males-only policy.[8]

---

[7] On the other hand, the judgment specifically stated that "[t]he Sheriff's Department may continue to call upon members of the Mounted Patrol to perform search and rescue in terrain where horses would be useful. The Sheriff's Department may continue to offer training in First Aid and Cardiopulmonary Resuscitation and other search and rescue skills to members of the Mounted Patrol who perform search and rescue for the Sheriff's Department."

[8] In its decision on the attorney fees issue, the trial court stated as follows: "It is clear from the pleadings and arguments of counsel for [appellants] that the primary relief sought by Ms. Sokolow and Mr. Schieber was an injunction compelling the Mounted Patrol to admit Ms. Sokolow and other qualified women as members.

"The secondary relief sought, in the alternative, was for an injunction prohibiting the County of San Mateo from maintaining any affiliation, either formal or informal with the Mounted Patrol of San Mateo County.

"An examination of the results of this litigation compels the conclusion that [appellants] did not succeed in either of their requests. Clearly, [appellants] did not achieve their primary goal, the admission of Ms. Sokolow and other qualified women. It is also clear that [appellants] failed to achieve their secondary goal, the prohibition of any affiliation between the Mounted Patrol and the County."

## III

Appellants now contend that the trial court erred in denying them attorney fees under the Civil Rights Attorneys' Fees Awards Act, 42 United States Code section 1988, and Code of Civil Procedure section 1021.5, as well as in denying them costs under Code of Civil Procedure section 1032. We agree with appellants.

### A.

Although the federal and state statutes provide somewhat different standards for the award of attorney fees, they each involve the threshold determination of whether or not the party seeking an award of fees was the prevailing party. ■ ■ ■ ■ 9.) The federal statute, found at section 1988 of title 42 of the United States Code, provides that in "any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[9] Thus, in order to recover attorney fees under this statute, a party must be "the prevailing party" in an action to enforce one of the enumerated federal civil rights acts. ■ The United States Supreme Court has stated that " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit.' [Citation.]" (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 50, 103 S.Ct. 1933], italics added, fn. omitted; see *Texas Teachers* v. *Garland School Dist.* (1989) 489 U.S. 782, __ [103 L.Ed.2d 866, 875, 109 S.Ct. 1486, 1491]; *McMahon* v. *Lopez, supra,* 199 Cal.App.3d at p. 835.)

The state attorney fees statute, found at Code of Civil Procedure section 1021.5, is slightly different in emphasis than the federal; although it actually

---

[9] Appellants' motion for attorney fees was based in part on their cause of action for violation of 42 United States Code section 1983, which reads in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." It is well established that state courts possess jurisdiction concurrent with federal courts to hear claims under section 1983; the fee provision of section 1988 is part of the remedy provided by section 1983 whether the action is brought in federal court or in state court. The courts of this state have routinely applied the attorney fees provision of section 1988 in cases resulting in the enforcement of federal constitutional rights or 42 United States Code section 1983. (*Maine* v. *Thiboutot* (1980) 448 U.S. 1, 10-11 [65 L.Ed.2d 555, 563-564, 100 S.Ct. 2502]; *McMahon* v. *Lopez* (1988) 199 Cal.App.3d 829, 835, fn. 2 [245 Cal.Rptr. 172]; *EWAP, Inc.* v. *City of Ontario* (1986) 177 Cal.App.3d 1108, 1112 [223 Cal.Rptr. 422].)

sets forth more requirements, it applies to state lawsuits seeking to enforce a broader panoply of rights. It states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

Like the federal statute, Code of Civil Procedure section 1021.5 provides for court-awarded attorney fees under a private attorney general theory. ▮ As our Supreme Court has stated: "[T]he private attorney general doctrine 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions . . . . [W]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]'" (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].)

Also like the federal statute, the state attorney fees statute begins with the requirement that the party seeking an award of attorney fees be the "successful," or "prevailing" party.

## B.

▮ Here, appellants were unequivocally the prevailing parties under both the federal and the state statutes. They successfully established that because of the intimate relationship between the Patrol and the sheriff's department, there existed a "significant involvement" between the County and the Patrol such that the Patrol's discriminatory membership policy constituted state action in violation of the equal protection clauses of the state and federal Constitutions and 42 United States Code section 1983; and they obtained a ruling granting a permanent injunction requiring the Patrol and the County to sever their unconstitutional relationship. Even though Sokolow did not achieve an order forcing the Patrol to admit her, she did obtain her alternative relief: severance of the County's significant involvement with the Patrol, as well as a concession on the County's part ending the Patrol's informal "monopoly" on equestrian search and rescue in the

County and opening up the opportunity to engage in mounted search and rescue to any qualified person regardless of sex.[10]

██ Although 42 United States Code section 1988 gives a trial court discretion in deciding whether to award attorney fees to a prevailing party, "that discretion is narrowly limited. [Citation.] The controlling standard is that a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' [Citation.] Section 1988 requires a strong showing of special circumstances to justify denying an award of attorney fees to the prevailing party in a section 1983 claim. [Citation.] . . . [G]ood faith is not a special circumstance justifying denial of attorney fees under section 1988. [Citation.] Those cases which have recognized special circumstances sufficient to deny an award of attorney fees to a prevailing party show that such special circumstances arise only in unusual situations of the sort not present in the instant case. [Citation.]" (*McMahon* v. *Lopez, supra,* 199 Cal.App.3d at p. 836; see *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 475-476 [201 Cal.Rptr. 424].)
██ Here, the right which appellants were successful in vindicating and enforcing by permanent injunction was the vital constitutional right of equal protection, the right to be free from state-sponsored invidious discrimination. There were no "special circumstances" in this case justifying the trial court's denial of attorney fees under 42 United States Code section 1988.

Appellants were also independently entitled to attorney fees under the provisions of Code of Civil Procedure section 1021.5. This litigation resulted in a decision that the County's "significant involvement" with an organization which discriminates on the basis of sex constituted a violation of appellants' constitutional rights, and that the County could therefore not maintain its involvement with that organization as it had in the past. Thus, appellants' lawsuit did vindicate "an important right affecting the public interest"—the constitutional right of equal protection and to be free from governmental involvement in invidious discrimination. Appellants had no

---

[10]Respondents urge that in determining that appellants were not the "prevailing party" for purposes of attorney fees, the trial court properly followed the "central issue" test enunciated by the Fifth Circuit; they argue that in *Hensley* v. *Eckerhart, supra,* 461 U.S. 424, the United States Supreme Court did not enunciate a definitive test to use in determining a prevailing party. This argument is no longer viable in view of the recent decision of the United States Supreme Court in *Texas Teachers* v. *Garland School Dist., supra,* 489 U.S. at page __ [103 L.Ed.2d at pages 875-878], in which the high court rejected the Fifth Circuit "central issue" test and definitively adopted the "significant issue" test enunciated in *Nadeau* v. *Helgemoe* (1st Cir. 1978) 581 F.2d 275, 278-279, as restated in *Hensley* v. *Eckerhart, supra,* at page 433 [76 L.Ed.2d at page 50]: " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " (*Ibid.,* quoting *Nadeau* v. *Helgemoe, supra,* at pp. 278-279.)

personal pecuniary interest in the subject of the litigation, except insofar as taxpayers they had to support government-sponsored discrimination. They sought to enforce their fundamental rights to equal protection and to be free from discrimination on the basis of sex. Litigation enforcing these rights necessarily confers a "significant benefit" on society as a whole, as well as on the direct victims of sexual discrimination. Moreover, it will deter other governmental entities from undertaking similar activities. Finally, the financial burden on appellants caused by their private enforcement of their fundamental rights is "such as to make the award appropriate . . . ." (*Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078, 1103 [240 Cal.Rptr. 569, 742 P.2d 1290]; *Isbister* v. *Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 85-86 [219 Cal.Rptr. 150, 707 P.2d 212]; *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 319, fn.7 [193 Cal.Rptr. 900, 667 P.2d 704]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 939-941 [154 Cal.Rptr. 503, 593 P.2d 200]; *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 38-47 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1013 [223 Cal.Rptr. 914].)

■ The trial court's ruling denying attorney fees in this case was based on its determination that appellants were not the prevailing party. This rationale is entirely unconvincing, particularly when viewed in the light of the court's decision on the merits. The trial court's memorandum of decision unequivocally concluded that "the undisputed facts in and of themselves show *significant involvement*" by the sheriff's department in the activities and affairs of the Patrol, and that "the private entity is *so closely entwined* with the governmental entity" that the Patrol must be held to be acting under color of state law for purposes of compliance with the requirements of the equal protection clauses of both the federal and state Constitutions and the provisions of 42 United States Code section 1983. (Italics added.) The court held that "under the law established by the United States Supreme Court as early as 1961 that, *so long as the governmental relationship exists,*" the Patrol's bylaws limiting membership to males violated appellant Sokolow's constitutional and federal statutory rights. (Italics added.) Then in its judgment, the trial court imposed a remedy specifically and expressly intended to sever the "significant involvement" of the County Sheriff in the Patrol.

By virtue of the trial court's own language in its decision and judgment, the remedy imposed *must* necessarily have severed all significant involvement and entanglement of the County in the activities and affairs of the Patrol. Otherwise, had the judgment *not* done so, the County and the Patrol would still be "entwined," state action would still be present, and the court would not have remedied the constitutional violation it so clearly found.

## C.

In short, the trial court's decisions on the merits and on the issue of attorney fees cannot be reconciled. All parties have accepted the result of the court's original decision and judgment thereon. Respondents have not appealed the substantive merits or the result. The judgment finding a violation of Sokolow's constitutional rights was overwhelmingly supported by substantial evidence in the record. The permanent injunction imposed did sever the significant involvement of the County in the Patrol's activities, and ended the special benefits enjoyed by the Patrol at the expense of County taxpayers.

On the basis of the appellants' complaint, the trial court's findings that the County and the Patrol had violated appellants' constitutional rights, and the actual content of the judgment specifically enjoining the respondents from maintaining the kind of relationship they had had in the past, we conclude that appellants were in fact the prevailing parties for purposes of attorney fees, and that the denial of attorney fees was erroneous under both 42 United States Code section 1988 and Code of Civil Procedure section 1021.5.

## IV

## A.

The fact that appellants may recover an award of attorney fees as the prevailing party under 42 United States Code section 1988 does not necessarily entitle them to the full amount of their request. Even after determining that a party is entitled to fees because it "prevailed," the trial court must still determine what amount of fees would be "reasonable" in light of the relative extent or degree of the party's success in obtaining the results sought.

As stated by the United States Supreme Court: "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

". . . . . . . . . . . . . . . . . . . . . . . .

"There is no precise rule or formula for making these determinations. The [trial] court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

". . . . . . . . . . . . . . . . . . .

". . . We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. . . .

"We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his [or her] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fee reduced simply because the [trial] court did not adopt each contention raised. But where the plaintiff achieved only limited success, the [trial] court should award only that amount of fees that is reasonable in relation to the results obtained." (*Hensley* v. *Eckerhart, supra,* 461 U.S. 424 at pp. 436-437, 439-440 [76 L.Ed.2d at pp. 52, 54-55], fns. omitted.)

Thus, although we have concluded that the trial court erred in not finding that appellants were the prevailing or successful parties in the litigation below, the degree or extent of appellants' success in obtaining the results which they sought must be taken into consideration in determining the extent of attorney fees which it would be *reasonable* for them to recover. As so clearly set forth by the United States Supreme Court in *Hensley* v. *Eckerhart, supra,* although the trial court has discretion to make this equitable judgment of determining the amount of a fee award, it must provide "a concise but clear explanation of its reasons for the fee award," making clear that it has considered the relationship between the amount of the fee awarded and the results obtained, and awarding only that amount of fees that is reasonable in relation to the results actually obtained. (*Hensley, supra,* 461 U.S. at p. 437 [76 L.Ed.2d at p. 55].)

## B.

■ As discussed, appellants were entitled to attorney fees not only under the federal statute, but under Code of Civil Procedure section 1021.5

as well. The right to attorney fees under the state statute is entirely independent of the federal right. In interpreting and applying that right under section 1021.5, federal precedent is of only analogous precedential value; it is not controlling. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 639, fn. 29 [186 Cal.Rptr. 754, 652 P.2d 985]; *Sundance* v. *Municipal Court* (1987) 192 Cal.App.3d 268, 274 [237 Cal.Rptr. 269].) The issue of whether appellants are entitled to the full amount of their attorney fees request under state law therefore poses a separate question not answerable simply by reference to *Hensley* v. *Eckerhart, supra,* 461 U.S. 424. ■■■ However, under state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success.

Our Supreme Court has stated, "absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (*Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 639, fn. omitted.) Specifically, the Supreme Court in that proceeding affirmed the award of attorney fees for services rendered in defense of the fee award on appeal, and reversed the order of the trial court denying fees for the preparation of the fee motions. (*Ibid.*) There is nothing in the decision to suggest that a trial court should not reduce the amount of the attorney fees to be awarded where a prevailing party plaintiff is actually unsuccessful with regard to certain objectives of its lawsuit.

In one recent case under section 1021.5, a Court of Appeal reversed a trial court order excluding from an award of attorney fees 458 hours of attorneys' time expended on the preparation and argument of certain theories on which the plaintiffs did not prevail. The appellate court, citing and relying on *Serrano* v. *Unruh, supra,* 32 Cal.3d at page 639, held that it was within the trial court's discretion to determine whether to compensate the plaintiffs for attorney time spent on an unsuccessful legal theory, and that all time reasonably spent should be compensated. The trial court's order was remanded to permit the trial court to exercise its discretion to determine whether the time spent on the unsuccessful legal theory had been reasonably incurred. (*Sundance* v. *Municipal Court, supra,* 192 Cal.App.3d at pp. 273-274.)

The *Sundance* decision is distinguishable from the case before us, for several reasons. First, in *Sundance,* the plaintiffs had been entirely successful in obtaining their actual objectives. The matters as to which they had spent the attorney time at issue in the case were simply unsuccessful *theories* that had been advanced in pursuit of the same objectives as to which they did in fact prevail on the basis of different legal theories. It was only the theories that were unsuccessful, not the claims in support of which the

theories were advanced. Attorneys generally must pursue all available legal avenues and theories in pursuit of their clients' objectives; it is impossible, as a practical matter, for an attorney to know in advance whether or not his or her work on a potentially meritorious legal theory will ultimately prevail. (*Sundance* v. *Municipal Court, supra,* 192 Cal.App.3d at p. 273.) Where plaintiffs are entirely successful on all their claims for relief, it is not important that some of the legal theories used to support those claims were not found meritorious, so long as the plaintiffs did prevail.

Here, however, appellants may not be said to have obtained all the *results* they sought. Specifically, appellants were not successful in obtaining admission for women into the Patrol; neither were they successful in entirely eliminating the County's training and use of the Patrol for search and rescue missions. These were not merely unsuccessful legal theories which were ultimately unnecessary to the success of appellants' claims, upon which they entirely prevailed; to the contrary, they were important goals of appellants' lawsuit which they failed to obtain. Thus, in arriving at an award of reasonable attorney fees in the instant case, the trial court should take into consideration the limited success achieved by appellants.

## C.

■■ Neither the federal nor the state attorney fees statute specifically addresses the question of the propriety of apportioning attorney fees between different defendants. Nevertheless, we are of the opinion that, under the circumstances of this case, it is appropriate for the trial court to assess a greater percentage of the attorney fees award against the County rather than making an equal assessment between the County and the Patrol. (Cf. *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 942.)

Appellants' lawsuit was successful in eliminating the County's participation in invidious discrimination on the basis of sex. Appellants were also successful in obtaining savings to taxpayers, both directly, through the actual reduction in the County's expenditures on Patrol-related activities; and indirectly, through the termination of the County's involvement in invidious discrimination. The County has also been forced, through this litigation, to agree to permit women to engage in equestrian search and rescue under the aegis of the sheriff's department. On the other hand, although the close affiliation between the sheriff's department and the Patrol has been terminated except for search and rescue services, the Patrol was permitted to retain its male-only membership policy. To that extent, it has been less affected by this lawsuit than the County. The trial court, in its

own broad discretion, may apportion the attorney fees award between the County and the Patrol in recognition of these differences.

V

On the basis of its determination that appellants were not the "prevailing party," the trial court concluded that appellants were not entitled to their costs. This was error.

Under Code of Civil Procedure section 1032, except as otherwise expressly provided by statute, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) The statute states that where a party recovers other than monetary relief, the "prevailing party" is to be determined by the trial court, "and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted [by the Judicial Council] under [Code of Civil Procedure] Section 1034." (Code Civ. Proc., § 1032, subd. (a)(4).)

For the reasons we have discussed, and under the case law construing this statute, appellants were the "prevailing parties" in this litigation. (*Ferraro* v. *Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 52-53 [162 Cal.Rptr. 238]; *Lewin* v. *Board of Trustees* (1976) 62 Cal.App.3d 977, 983-984 [133 Cal.Rptr. 385].) Therefore the trial court erred insofar as it based its decision not to award costs on its determination that appellants were not the prevailing parties.

The order denying appellants' motion for attorney fees and costs is reversed, and the case is remanded to the trial court to make an award of attorney fees and costs consistent with this opinion. Respondents shall pay appellants' costs on appeal.

White, P. J., and Barry-Deal, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 21, 1989.