Filed 5/14/13  Garcia v. RPSAJ, Inc. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JULIA C. GARCIA, et al., | B235901 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC386216) |
| v. | |
| RPSAJ, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael C. Solner, Judge.  Affirmed.

Fernald Law Group, Brandon C. Fernald for Defendants and Appellants.

Lavi & Ebrahimian, N. Nick Ebrahimian, Jordan D. Bello; The deRubertis Law Firm, David M. deRubertis for Plaintiffs and Respondents.

_____

Plaintiffs and respondents Julia Garcia, Carmen Herrera-Villegas, and Laura Fiallos Silva sued appellants RPSAJ, Inc., dba Renee Strauss for the Bride, and Frances Renee Strauss, their former employers, bringing causes of action related to that employment. After jury trial, plaintiffs prevailed on most of their causes of action and were awarded damages totaling just over $200,000.

Plaintiffs moved for an award of attorney fees pursuant to various statutes, and the court awarded $382,440, jointly and severally against both defendants. On this appeal RPSAJ and Strauss contend that the court abused its discretion by making the entire award joint and several, and that Strauss should have been held responsible for only a small percent of the fees, and RPSAJ the rest. We affirm.

Facts

Defendants have not provided us with the transcript of the trial, leaving us to find the facts in the allegations of the complaint and various other of plaintiffs' pleadings.

From those documents, we learn that Strauss is the president and owner of RPSAJ, which does business as Renee Strauss for the Bride, a store which sells wedding dresses and related items. Plaintiffs are seamstresses who worked at Renee Strauss for the Bride.

The case began with Garcia and Herrera-Villegas, who were paid for overtime at the straight pay rate. They filed suit, bringing causes of action under various state and federal statutes.[1] Five days after Strauss was served with the complaint, she demoted Garcia and Herrera-Villegas to part time work. Two months later, she directed a manager to tell Fiallos Silva, a newer employee (who was not being properly paid for overtime, either) that her job would be in jeopardy unless she testified falsely in the suit. Fiallos Silva refused to give false testimony, and was fired. Five months after filing their lawsuit, Garcia and Herrera-Villegas were fired, too. Naturally, the complaint was

---

[1] The complaint also asserted claims for violation of rest break and meal requirements, but plaintiffs did not prevail on those claims.

amended to add Fiallos Silva as a plaintiff and to add claims relating to the plaintiffs' demotion and termination.

After a four and a half week jury trial, and subsequent bench hearing on remaining issues, judgment was entered against both defendants.

As to Garcia, judgment was entered against both defendants jointly and severally in the amount of $15,343 for unpaid overtime wages and related interest and penalties; and against RPSAJ in the sum of $76,418, for unpaid wages, penalties, damages for wrongful demotion and wrongful termination, and punitive damages, which were $10,000.

As to Herrera-Villegas, judgment was entered against both defendants jointly and severally in the amount of $13,428, for unpaid overtime wages and related interest and penalties; and against RPSAJ in the sum of $62,011, for unpaid wages, statutory penalties, damages for wrongful demotion and wrongful termination, and punitive damages, which were $6,000.

As to Fiallos Silva, judgment was entered against both defendants jointly and severally in the amount of $884 for unpaid overtime wages and related interest and penalties, and against RPSAJ in the amount of $32,951, for wrongful termination, statutory penalties, and punitive damages of $1,000.

Plaintiffs sought attorney fees, submitting evidence that fees amount to $442,166. They asked for a multiplier of two, for a total of $884,332.

In the declaration submitted with the fee request, plaintiffs' counsel described the case, as it began, as "a simple wage and hour matter," the kind of case which in counsel's experience settled early in the litigation over 99 percent of the time. This case, though, turned into "a litigation disaster caused by the actions of Defendants and/or their lawyers."

The declaration gives examples: Much time was spent on discovery, because defendants engaged in discovery abuse. Defendants never made a good-faith settlement offer, even at a mediation. Instead, Strauss promised to fight the case until the end.

3

Much time was spent on defending against RPSAJ's cross-complaint, filed a year and a half after the complaint was filed and two months prior to the initial trial date, which included a claim for misappropriation of trade secrets, a client list -- but at trial RPSAJ presented no evidence on the trade secrets claim. To the contrary, Strauss testified, truthfully, that she posts a customer list on her website. The claim was dismissed before the case went to the jury. Plaintiffs' counsel believed that the claim was brought in bad faith, in an attempt to delay trial and re-open discovery.

The sole remaining claim in the cross-complaint was for time card fraud. RPSAJ dismissed Fiallos Silva from the claim at trial. RPSAJ took nothing on the cross-complaint from the remaining cross-defendants.

The trial court made detailed findings on the fee request, finding that plaintiffs were entitled to reasonable attorney fees and costs, and that reasonable fees were $318,700. The court applied a 20 percent multiplier, and awarded fees of $382,440.

Plaintiffs had requested costs of $59,683. The court agreed with some of the contentions in defendants' motion to tax costs, and awarded $51,260 in costs.

Discussion

Defendants' sole contention on appeal is that the fee award should have been apportioned between them, with RPSAJ being ordered to pay most of the fees.

We begin by observing that RPSAJ's position, that the court erred by not burdening it with greater liability, is a novel one for this Court of Appeal. Nonetheless, defendants cannot succeed on this appeal, as their arguments have no merit.

"[T]rial courts have discretion not only in setting the amount of an award of attorney fees, but in allocating the award among various defendants based on their relative culpability." (*Gorman v. Tassajara Development Corporation* (2009) 178 Cal.App.4th 44, 97-98.) Defendants' first argument is that the court did not exercise its discretion -- indeed, that it did not know that it had discretion. For this argument, defendants rely on a statement by the court.

4

We put the statement in context. Counsel for defendants[2] argued the motion for fees, and argued that the court should exercise its discretion to apportion fees by apportioning only 14 percent to Strauss. Counsel for defendants then asked the court if the fee award was going to be apportioned between defendants.[3] The court answered, "No." Counsel for defendants continued to argue the motion, as did plaintiffs' counsel. Counsel for defendants then asked the court for its reason for denying the request that the fees be apportioned. The court made the statement defendants rely on, saying "I don't think there is any real authority for that. The facts as they came through at trial showed who was who here, Ms. Strauss and her company. And I don't think there is any need to apportion. So that request is denied."

This cannot be read as a statement that the court did not know that it had discretion. Rather, the court exercised its discretion, based on the facts at trial.

Defendants' argument on the merits is that given that Strauss was named in only a few causes of action, and that she was held liable for only 14.7 percent of the damages, she should have been ordered to pay only 14 percent of the fee award.

Defendants point out that Strauss was brought into the case with the third amended complaint, but we can see no relevance whatsoever in that fact, and also argue that Strauss was "not involved in the cross-complaint," with reference to the caption of that complaint -- but plaintiffs assert that Strauss had a lot to do with the cross-complaint, and in the absence of a record, we cannot disagree.

---

[2] They were jointly represented at trial, as they are on appeal.

[3] It was at this point that counsel made a statement that: "We suggested that 14 percent would be the maximum amount that she should be responsible for. And the cases that they cited saying that this is a joint obligation, that's not true. . . . In cases that they cited, the Supreme Court has said that no, the court has absolute discretion. If the court decides that's a joint obligation, that's not error; if the court decides it is obligation [sic], that's not error either. You have complete discretion in this matter." Plaintiffs argue that defendants thus conceded the point. Given that defendants repeatedly asked the court to apportion the fees, we cannot see a concession.

5

At any rate, none of the cases defendants cite require that a court determine apportionment of fees through a mechanical calculation of damages and causes of action. (See *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363; *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961; *No Oil, Inc. v. Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 28–29; *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250–251.)

Instead, the court could, and no doubt did, determine relative culpability from the facts at trial. Certainly, given the lack of a record, we may not conclude otherwise. (*Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal.App.4th 440, 447.) We note, too, the court's statement that given the facts of the case, apportionment between causes of action was difficult, if not impossible; that in special verdicts the jury found that Strauss had "the power to exercise control over" RPSAJ; and the court's finding that the facts at trial established the relationship between RPSAJ and Strauss and their relative culpability.

Disposition

The judgment is affirmed. Respondents to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ARMSTRONG, Acting P. J.


I concur:



KRIEGLER, J.


6

Julia C. Garcia et al. v. RPSAJ, Inc. et al.
B235901

MOSK, J., Dissenting

I dissent.

I believe that the trial court did not exercise its discretion to apportion the attorney fees. Had it done so there was a tenable case for such an allocation.

In this action the plaintiffs employees alleged 13 causes of action, four of which were against defendant Frans Renee Strauss (Strauss). Strauss was named a year after the action was commenced against defendant RPSAJ, Inc. (RPSAJ). Plaintiffs prevailed on seven of their claims, only two of which were against Strauss. Strauss was liable for $29,653.34 of 14.7 percent of plaintiffs' total recovery, which was $201,037.22. The trial court awarded attorney fees in the amount of $382,440 against both defendants jointly and severally.

Strauss argued to the trial court that the attorney fees should be allocated based on culpability as reflected in the damage awards. The trial court said, "I don't' think there is any real authority for that."

As stated in *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 97-98 (*Gorman*), "California law has recognized, in different contexts, that trial courts have discretion not only in setting the amount of an award of attorney fees, but in allocating the award among various defendants based on their relative culpability. (*No Oil, Inc. v. Occidental Petroleum Corp*. (1975) 50 Cal.App.3d 8, 28-29 [123 Cal.Rptr. 589] [enforcing former California Coastal Zone Conservation Act of 1972]; see *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 986 [259 Cal.Rptr. 599] [fees under § 1021.5]; *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250-251 [261 Cal.Rptr. 520] [same].) *Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578 [240 Cal.Rptr. 784] noted on page 592: '[F]ederal courts have adopted various methods of apportioning or allocating fees among defendants in

cases involving fee awards pursuant to 42 United States Code section 1988, and this court may look to federal law in applying section 1021.5. In *Grendel's Den, Inc.* v. *Larkin* (1st Cir. 1984) 749 F.2d 945 the court instructed, "[A] number of theories for apportioning fees have been advanced . . . . Among them are the simplest approach of dividing the award equally among the defendants . . . , and the more sophisticated approaches of apportionment by degree of each defendant's liability . . . , and apportionment by relative time spent litigating against each defendant. . . . Each of these theories may be more or less valid in a given case." (*Id.*, at pp. 959-960.)'"

In *Gorman v. Tassajara Development Corp., supra,* 178 Cal.App.4th 44, the court reversed the attorneys fee awards because "there is no apparent reasonable basis for the award in the record, [and thus] the award itself is evidence that it resulted from any arbitrary determination." (*Id.* at p. 101.) It follows that the failure to exercise discretion based on an error in law should be reversible. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 315; see also *People v. Bigelow* (1984) 37 Cal.3d 731, 744-745 [failure to exercise discretion, is, itself, reversible error].)

Had the trial court exercised its discretion and considered the applicable authority, it would have found cases that suggest such an allocation may even be mandatory. Thus, in *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 375, the court stated, "It can even constitute an abuse of discretion *not* to allocate fees when defendants are of very different relevant culpability." In *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1672, fn. 7, the court said that had defendants not been "equally culpable of the unprotected conduct," it would have been appropriate for the trial court to allocate the attorneys' fee award among defendants. In *Californians For Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 976, the court said, "It is certainly reasonable, given the facts of a specific case, for a court to apportion a fee award based upon the relative culpability of the parties. (See also *Jose P. v. Ambach* (2d Cir. 1982) 669 F.2d 865, 871 [apportionment of fees according to "relative culpability" was within district court's discretion]; *Mendoza v. Blum* (S.D.N.Y. 1985) 602 F.Supp.

200, 203 ["Liability for the fees generated by the work performed by plaintiffs' counsel will be apportioned according to the relative culpability of defendants"].)

In *No Oil, Inc. v. Occidental Petroleum Corp., supra,* 50 Cal.App.3d 8, defendants prevailed at trial and were awarded attorneys' fees jointly and severally against plaintiffs. The court reversed the judgment and the corresponding fee award. (*Id.* at pp. 12, 28.) Because defendants rather than plaintiffs were to be liable for the fees, the court said apportionment of fees rather than joint and several liability for the whole amount was appropriate. The court stated, "Such disposition of the matter, now that fees are to be awarded against defendants, seems inappropriate in light of the disparity between the contribution of defendant Occidental to the necessity for and the burden of the litigation in relation to that of defendant Landowners Association. The latter was not responsible for the threatened drilling which occasioned this lawsuit and its participation in the litigation contributed little to the cost of representation of plaintiffs. No substantial new contentions were injected by such defendant and its participation in the trial was for the most part that of an observer. *The court should therefore make a fair allocation of the responsibility as between these defendants for payment of the fees awarded plaintiffs.* (*Id.* at pp. 28-29, italics added, fns. omitted); see also *Sokolow v. County of San Mateo, supra,* 213 Cal.App.3d at pp. 250-251; *Washburn v. City of Berkeley, supra,* 195 Cal.App.3d at p. 592.)

It may be that the relationship between Strauss and RPSAJ justifies an allocation unrelated to the jury verdict or even joint and several liability. I would not speculate on the reason why Strauss desires the allocation. But, the trial court should recognize that there is authority for an allocation of attorney fees based on culpability, if it does not already, and make a determination taking into account such authority.

Accordingly, I would reverse the attorney fee award and remand the matter to the trial court to exercise its discretion in a manner required by law.


MOSK, J.

3