Filed 5/23/14  Heyen v. Safeway CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LINDA HEYEN, | B243610 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC277481) |
| v. | |
| SAFEWAY INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony J. Mohr, Judge.  Affirmed.

Law Offices of Stephen Glick, Stephen Glick; Law Offices of Ian Herzog, Ian Herzog; Daniels, Fine, Israel, Schonbuch & Lebovits, Paul R. Fine, Scott A. Brooks, and Craig S. Momita for Plaintiff and Appellant.

Littler Mendelson, J. Kevin Lilly, R. Brian Dixon, and Philip L. Ross for Defendants and Appellants.

# INTRODUCTION

At the conclusion of wage and hour litigation that spanned almost 10 years, plaintiff Linda Heyen (Heyen) recovered approximately $26,000 in unpaid overtime against her former employers, Safeway Inc. and The Vons Companies, Inc. (collectively, Safeway or defendants). Heyen then sought statutory attorney fees of $1,512,794.50, and the court granted her request in part, awarding fees of $603,150.

Both Heyen and Safeway appeal from the attorney fee award. Heyen contends that the award is impermissibly *small*, and specifically urges that the trial court erred by reducing her fees to reflect her limited success at trial. Safeway contends that the award is impermissibly *large* because the trial court applied a lodestar that included inflated hourly rates, compensated Heyen's attorneys for work done before Heyen became a party to the litigation, and double counted certain factors relevant to the fee award.

We affirm the attorney fee award in its entirety. The amount of an attorney fee award is a matter within the sound discretion of the trial court, which is the best judge of the value of professional services rendered. While the trial court's judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong—i.e., the amount awarded "'is so large or small that i[t] shocks the conscience and suggests that passion and prejudice influenced the determination.' (*Akins v. Enterprise Rent-A-Car Co*. (2000) 79 Cal.App.4th 1127, 1134.)" (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.) Having considered the record as a whole, we conclude that the amount awarded in the present case is neither so large nor so small as to shock the conscience, and thus we decline to disturb the trial court's considered judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Trial and Judgment

Linda Heyen worked as an assistant manager in Safeway stores in Rancho Bernardo, Oceanside, and Hemet from October 2003 to October 2006. In October 2006, Safeway terminated Heyen's employment.

Peter Knoch and Jason Ritchey filed a class action complaint against Safeway on July 31, 2002, alleging causes of action for nonpayment of overtime compensation and unfair business practices. Among other things, plaintiffs alleged that Safeway "established policies, inter alia, where non-exempt employees would work overtime hours as improperly classified exempt employees such that the employees were not paid for hours worked over 40, and were not paid premium overtime for said hours as required by California law." Heyen was named as an additional class representative in the second amended complaint, which was filed in December 2006. (*Heyen v. Safeway Inc*. (2013) 216 Cal.App.4th 795, 799 (*Heyen I*).)

Plaintiffs sought certification of an "overtime class" defined as "[a]ll current and former Store Managers, First Assistant Managers and Second Assistant Managers of Safeway Inc. in California, including at Safeway, Vons, Pavilions and Pak'N'Save stores, during the periods from July 11, 1998 through the present, who were classified as exempt and were not paid overtime." On September 11, 2008, the trial court denied class certification, concluding among other things that class treatment was "not a superior means of adjudicating the claims in this action." Following the denial of class certification, Knoch and Ritchey dismissed their claims pursuant to a stipulated judgment entered December 11, 2008, leaving Heyen as the sole plaintiff.

Heyen's claims were tried to an advisory jury over 10 days in 2009. Heyen's primary theory at trial was that Safeway should have classified her as a nonexempt employee, rather than as an exempt employee, because she regularly spent more than 50 percent of her time doing nonexempt tasks such as bagging groceries and stocking shelves. (*Heyen I*, *supra*, 216 Cal.App.4th at p. 799.) Heyen claimed she had been

3

misclassified as an exempt employee, and thus was owed unpaid overtime, for all of the 83 weeks (approximately 415 work days) that she worked as the assistant manager of the Oceanside store.

At the conclusion of trial, the jury returned an advisory special verdict finding that Heyen spent more than 50 percent of her time performing nonexempt work on 108 days, and that on each of those 108 days she worked six hours of unpaid overtime. The trial court adopted the jury's advisory findings and determined that "the correct calculation of the amount of overtime pay owed under the jury's verdict—an amount with which Safeway does not disagree—is $26,184.60, plus interest." On September 26, 2011, the court entered judgment for Heyen in the amount of $26,184.60, plus prejudgment interest of $15,473.86.

Safeway appealed the judgment, contending that the trial court failed to properly account for hours Heyen spent simultaneously performing exempt and nonexempt tasks—"i.e., 'actively . . . manag[ing] the store while also concurrently performing some checking and bagging of customer grocery purchases.'" (*Heyen I*, *supra*, 216 Cal.App.4th at p. 799.) We affirmed the judgment in its entirety. (*Ibid*.)

## II.    Heyen's Motion for Attorney Fees

On November 15, 2011, Heyen filed a motion seeking statutory attorney fees of $1,512,794.50, as follows:

| | | | |
|---|---|---|---|
| Scott Brooks | 596.60 hours | $650/hour | $387,790 |
| Paul Fine | 5 hours | $850/hour | $4,250 |
| Craig Momita | 577.30 hours | $400/hour | $230,920 |
| Dennis Sinclitico | 15.10 hours | $275/hour | $4,152.50 |
| Zachary Lebovits | 7.40 hours | $150/hour | $1,110 |
| Stephen Glick | 165 hours | $800/hour | $132,416 |

4

| Ian Herzog | 419 hours | $1,000/hour | $419,660 |
| Susan Abitanta | 554 hours | $600/hour | $332,496 |
| **TOTAL:** | **2,340 hours** | | **$1,512,794.50** |

Defendants opposed the motion. They urged: (1) Heyen waived the right to attorney fees when she stipulated to pursue a single claim under Business and Professions Code section 17200 et seq.; (2) Heyen's ultimate recovery was insufficient to justify the extensive litigation that preceded it; (3) the rates charged by Heyen's counsel did not reflect prevailing rates; and (4) the majority of tasks for which Heyen sought fees did not relate to her claims and were not reasonable.

### III.    The Attorney Fee Order

On July 5, 2012, the court awarded Heyen attorney fees of $603,150.24. It explained the award as follows:

*Lodestar:* The court noted that the case began as a nationwide class action in 2001. By the time Heyen joined the lawsuit in December 2006, her counsel had already billed approximately 330 hours, the equivalent of $176,522.50 in fees. As to these hours, the court said: "While counsel may bill for work completed before filing a case [citation], permitting complete recovery in this case would result in a disproportionate award. (However, the Court acknowledges that the work performed in preparation for Heyen's case will be used by counsel in the numerous other cases now awaiting trial. Some costs unrelated to Heyen will be permitted, but Plaintiff['s] [counsel] are admonished that they will **not** recover these costs in any subsequent matter.)" The court also noted with regard to the "lodestar" that two categories of fees Heyen claimed were noncompensable, namely: (1) fees for time spent litigating Heyen's "bonus" theory, which she lost on summary judgment ($3,582.50); and (2) fees for "clerical work" performed by attorneys ($1,336.25). The court therefore deducted $4,918.75 from counsel's lodestar, leaving $1,507,875.75.

5

*Hourly rates:* The court noted that plaintiff's counsel "is a very experienced firm and persisted in the presentation of a difficult case in the face of an unusually tenacious defense. While the rates requested are high (as high as $1,000/hour for attorney Herzog) they are comparable to the rates charged by defense counsel. Plaintiff['s] selection of such experienced counsel was not unreasonable, given the opposition. Plaintiff['s] counsel had to be competent enough to combat Defendants' high-powered legal team, calling for a higher degree of skill than most ordinary wage and hour litigation might. The rates requested by Plaintiff['s] counsel are reasonable and will not be reduced."

*Adjustments to the lodestar:* The court noted that it must consider whether to adjust the lodestar up or down in light of the factors articulated in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 (*Ketchum*). With regard to potential adjustments, it said the following:

(1) Novelty and difficulty of the questions involved: "The first factor does not point in favor of a positive multiplier. As Defendants emphasize, this was ultimately a routine wage and hour case, requiring no unusual skill or legal acumen."

(2) Attorney skill: "Plaintiff['s] counsel displayed a high degree of competence and skill. Defendants litigated this case with tenacity and invested substantial time and resources. As their own billing records indicate, Defendants utilized as many as 35 attorneys and incurred more than $1 million in legal fees. Given the nature of the litigation in this particular case, the Court is inclined to find that the skill and competence Plaintiff['s] counsel displayed in successfully prosecuting this case against these Defendants warrant[] a positive multiplier."

(3) Extent to which the nature of the litigation precluded other employment: "[W]hile the record does not describe precisely what other employment Plaintiff's counsel was precluded from undertaking [because] of this case, logic dictates that there must have been significant opportunity costs over the ten-year life of this case, justifying a slightly positive multiplier."

6

(4)     Contingent nature of the award: "[C]ounsel's fee was contingent. This is particularly significant here, where counsel has been paid nothing since the case was filed — years ago."

*Limited success*: Citing *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989 (*Chavez*), the court noted that a plaintiff's limited success at trial is relevant to an attorney fee award. Specifically, the court noted, "'If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court "should award only that amount of fees that is reasonable in relation to the results obtained."'" In the present case, the court said that a reduction of the lodestar was appropriate because plaintiff recovered only about 25 percent of the unpaid overtime to which she had claimed to be entitled. It explained: "The question is whether litigating this single overtime compensation claim that produced only $26,184.60 in damages reasonably justifies over $1.5 million in attorney fees. It does not. Plaintiff requested 83 weeks of overtime and prevailed as to 21 weeks — approximately 25% of what Plaintiff asked of the jury. The Court notes that this does not take into account the additional unsuccessful claims that were asserted earlier. If we were to measure plaintiff's fee precisely in line with the level of her success, the Court would apply a negative multiplier of 75% to Plaintiff's counsel's lodestar, for a fee of $376,968.92. However, in light of the factors set out in *Ketchum*, *supra*, and discussed in the preceding section, the Court determines that the negative multiplier should be .4 as opposed to .75. Therefore, Plaintiff's counsel is awarded attorney fees in the sum of $603,150.24."[1]

Heyen appealed from the attorney fee award, and defendants cross-appealed.

---

[1]     We understand the trial court's statement to mean that rather than reduce the fees by 75 percent (that is, award Heyen 25 percent of her total fees), it would reduce the fees by 60 percent, thus awarding Heyen 40 percent of her total fees.

## I.     Standard of Review

"An order granting an award of attorney fees is generally reviewed for abuse of discretion.  (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 887; *MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397.)  In particular, '[w]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court.'  (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777; see *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [recognizing trial court's broad discretion in determining amount of reasonable attorney fees because experienced trial judge is in the best position to decide value of professional services rendered in court]; *Ketchum v. Moses*[, *supra*,] 24 Cal.4th 1122, 1132 [same].)  'An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion.'  (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004; accord, *PLCM Group, Inc.*, at p. 1095.)"  (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319-1320 (*Concepcion*).)[2]

## II.     The "Lodestar" Method

A prevailing plaintiff in a wage and hour case is entitled to attorney fees pursuant to Labor Code section 1194, subdivision (a), which provides:  "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal

---

[2]     Heyen urges that her appeal should be subject to de novo review because it raises what she characterizes as an issue of law:  the "application of the limited success doctrine."  We do not agree.  There is no real dispute between the parties about the factors relevant to an attorney fee award—the sole dispute concerns the *application* of these factors in the present case.  Such application is "essentially [a] factual matter[]" (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 247), and thus it is subject to the abuse of discretion standard.

minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

"'[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."' (*PLCM Group*, *Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095; accord, *Serrano v. Priest* (1977) 20 Cal.3d 25, 48 & fn. 23 ['"[t]he starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case"'].)" (*Concepcion*, *supra*, 223 Cal.App.4th at p. 1320.)

"[T]his initial calculation [of the lodestar] requires the court to determine the reasonable, not actual, number of hours expended by counsel entitled to an award of fees. (See *EnPalm*, *LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774 & fn. 4.) Thus, class counsel 'are not automatically entitled to all hours they claim in their request for fees. They must prove the hours they sought were reasonable and necessary.' (*El Escorial Owners' Assn. v. DLC Plastering*, *Inc.* (2007) 154 Cal.App.4th 1337, 1366.) 'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.) Indeed, '[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635; accord, *Chavez v. City of Los Angeles*[, *supra*,] 47 Cal.4th 970, 990; see *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132 ['[i]n referring to "*reasonable*" compensation, we indicated that trial courts must carefully review attorney

9

documentation of hours expended; "padding" in the form of inefficient or duplicative efforts is not subject to compensation'].)

"After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case before it, including the novelty and difficulty of the case, the attorneys' skill in presenting the issues, the amount involved and degree of success achieved, the extent to which the case precluded the attorneys from accepting other work and the contingent nature of the work. (See *PLCM Group*, *Inc. v. Drexler*, *supra*, 22 Cal.4th 1084, 1096; *Serrano v. Priest*, *supra*, 20 Cal.3d at p. 49.) There is 'no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation.' (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834.) 'The purpose of such adjustment is to fix a fee at the fair market value for the particular action.' (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132; see *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)

"Although the court may consider the amount at issue in the litigation, as well as counsel's relative success in achieving the client's litigation objectives in adjusting the lodestar figure, the attorney fee award need not bear any specific relationship to the dollar amount of the recovery. (See *Taylor v. Nabors Drilling USA*, *LP* (2014) 222 Cal.App.4th 1228, 1251 [affirming $680,000 attorney fee award based on lodestar figure and multiplier in action under California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) with jury verdict for $160,000; '[a]ppellant has not cited any authority requiring that fee awards be proportional to the amount of damages recovered']; cf. *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 420-421 [rejecting in awarding fees in civil rights action any requirement of proportionality of fees sought to verdict although recognizing the court may consider plaintiff's success in determining the reasonableness of fees].)" (*Concepcion*, *supra*, 223 Cal.App.4th at pp. 1320-1321.)

10

Heyen contends that the trial court erred in applying the "limited success" doctrine to reduce her attorney fee award. She urges that her counsel had to expend thousands of hours over many years because of defendants' aggressive litigation tactics, and "[t]here can be no reasonable nor rational argument but that Safeway would have put up the same 'take no prisoners' fight regardless if Heyen had a crystal ball and was able to predict with great precision how the trier of fact would consider her work weeks." Further, she says, if she is awarded only a fraction of the fees required to prosecute her case, "there should be no mistake . . . but that Safeway understands the economics and that whenever employees do not win 100% of the overtime hours claimed, their counsel will not be fully compensated and will have a very practical real world disincentive to pursue these actions."

Defendants disagree, urging that the trial court has broad discretion to reduce the lodestar if a plaintiff's litigation success is limited. Such a reduction was appropriate in the present case, defendants urge, because the claims plaintiff pursued during discovery were much broader than those she ultimately pursued at trial, and the jury ultimately awarded plaintiff unpaid overtime for only about 25 percent of the days she sought. Thus, defendants say, "When compared to the scope of the claims [counsel] pursued at the outset, and repeatedly lost or dismissed over the course of the litigation, Heyen's counsel's eventual success was 'limited' indeed."

For the reasons that follow, we conclude that the trial court did not abuse its discretion by reducing Heyen's fees under the "limited success" doctrine.

## I.     The "Limited Success" Doctrine

"California law, like federal law, considers the extent of a plaintiff's success a crucial factor in determining the amount of a prevailing party's attorney fees. (*Chavez v. City of Los Angeles*[, *supra*,] 47 Cal.4th 970, 989.) 'Although fees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims

11

[citation], "under state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success." . . . .' (*Ibid.*, quoting *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249 (*Sokolow*).) The trial court may reduce the amount of the fee award 'where a prevailing party plaintiff is actually unsuccessful with regard to certain objectives of its lawsuit.' (*Sokolow*, at p. 249.)

"California courts . . . have adopted the approach set forth in *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434 (*Hensley*). (*ComputerXpress*, *Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1019.) *Hensley* recognized that a plaintiff might join in one action 'distinctly different claims for relief that are based on different facts and legal theories.' (*Hensley*, at p. 434.) As a consequence, an attorney's work on one claim may be unrelated to work on another claim. (*Id*. at pp. 434-435.) Work on an unsuccessful and unrelated claim generally will not be compensable, as it 'cannot be deemed to have been "expended in pursuit of the ultimate result achieved." [Citation.]' (*Id*. at p. 435; see *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1310 (*Harman I*).)

"In cases of limited success, *Hensley* establishes a two-part inquiry. (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 414 (*Harman II*).) The first step asks whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded[.]' (*Hensley*, *supra*, 461 U.S. at p. 434; see *Harman II*, at pp. 417-418.) In the first step of the *Hensley* inquiry, charges included in the initial lodestar calculation are 'subject to challenge . . . as being unrelated to the plaintiff's successful claims.' (*Harman I*, *supra*, 136 Cal.App.4th at p. 1310.) Thus, this step requires a court to examine whether the prevailing party's unsuccessful claims are related to its successful ones. (*Hensley*, at pp. 434-435.) There is no certain method for determining when claims are related or unrelated, but *Hensley* 'instructs the court to inquire whether the "different claims for relief . . . are based on different facts and legal theories." [Citation.] If so, they qualify as unrelated claims. Conversely, related claims "will involve a common core of facts or will be based on related legal theories." [Citation.]' (*Harman I*, at pp. 1310-1311.) '". . . Under this analysis, an unsuccessful

12

claim will be *un*related to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised."' (*Id*. at p. 1311, quoting *Mary Beth G. v. City of Chicago* (7th Cir. 1983) 723 F.2d 1263, 1279.)

"If successful and unsuccessful claims are *related*, the court proceeds to the second step of [the] *Hensley* inquiry, which asks whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' (*Hensley*, *supra*, 461 U.S. at p. 434.)  In this step, the court will 'evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."' (*Harman II*, *supra*, 158 Cal.App.4th at p. 417, quoting *Hensley*, *supra*, 461 U.S. at p. 435.)  Full compensation may be appropriate where the plaintiff has obtained 'excellent results,' but may be excessive if 'a plaintiff has achieved only partial or limited success.' (*Hensley*, at pp. 435, 436.)  'The court may appropriately reduce the lodestar calculation "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."' (*Harman I*, *supra*, 136 Cal.App.4th at p. 1312, quoting *Hensley*, at p. 440.)" (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238-239 (*EPIC*).)

"California courts have distinguished between unsuccessful 'theories' and unsuccessful 'claims.' (See *Sokolow*, *supra*, 213 Cal.App.3d at pp. 249-250, 261.) Courts have discretion to compensate a partially successful plaintiff for time spent on unsuccessful legal theories, provided such time was reasonably incurred. (*Id*. at p. 249.) But a reduction in the fee award may be appropriate where a plaintiff has failed to succeed on some of its claims. (*Id*. at p. 250.)  The distinction between theories and claims is not always clear.  As a general rule, however, California courts have tended to distinguish theories and claims by comparing the goals or objectives of the plaintiff's litigation with the relief ultimately obtained.  (See *ibid*. [considering whether plaintiffs obtained all the relief sought in their complaint].)  The rule might aptly be summarized as

13

follows: 'success counts and is to be judged . . . by the relief given or the right established.' (Dobbs, *Reducing Attorneys' Fees for Partial Success: A Comment on Hensley and* Blum (1986) 1986 Wis. L.Rev. 835, 842.)" (*EPIC*, *supra*, 190 Cal.App.4th at p. 240.)

Even where successful and unsuccessful claims are related, a court may reduce the total fee awarded if it determines, in the exercise of its discretion, that the relief obtained "was limited in comparison to the scope of the litigation as a whole. . . . '[A] partially prevailing party is not necessarily entitled to all incurred fees even where the work on the successful and unsuccessful claims was overlapping.'" (*EPIC*, *supra*, 190 Cal.App.4th at pp. 247-248.)

The court applied these principles in *Sokolow*, *supra*, 213 Cal.App.3d 231. There, plaintiff Sokolow, a woman, had been denied admission to an all-male mounted patrol that maintained a close relationship with a county sheriff's department. (*Id.* at pp. 236-237.) She and another plaintiff filed suit, seeking several remedies: (1) a declaration that the patrol's bylaws restricting membership to men violated the equal protection clauses of the United States and the California Constitutions, (2) an injunction restraining the patrol from excluding qualified women from membership, or (3) in the alternative, an injunction restraining the county from maintaining any affiliation with the patrol. (*Id.* at p. 239.) The trial court found the patrol was closely enough involved with the sheriff's department to subject it to the equal protection clauses, and it required the patrol to choose between its relationship with the department and its membership policy excluding women. (*Id.* at p. 240.) The patrol chose to sever its relationship with the sheriff's department rather than admit women. (*Id.* at p. 241.)

The trial court denied plaintiffs their attorney fees, finding that they were not the prevailing parties. (*Sokolow*, *supra*, 213 Cal.App.3d at pp. 242-243.) The appellate court disagreed and reversed, concluding that plaintiffs had unequivocally prevailed in the litigation and thus were entitled to an award of attorney fees. (*Id.* at p. 244.) It therefore remanded the case to the trial court for a determination of the fees to which plaintiffs were entitled. It noted, however, that plaintiffs were not necessarily entitled to all their

14

attorney fees because they had not achieved all their litigation objectives. The court explained: "[U]nder state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success. [¶] . . . [¶] Here, . . . appellants may not be said to have obtained all the *results* they sought. Specifically, appellants were not successful in obtaining admission for women into the Patrol; neither were they successful in entirely eliminating the County's training and use of the Patrol for search and rescue missions. These were not merely unsuccessful legal theories which were ultimately unnecessary to the success of appellants' claims, upon which they entirely prevailed; to the contrary, they were important goals of appellants' lawsuit which they failed to obtain. Thus, in arriving at an award of reasonable attorney fees in the instant case, the trial court should take into consideration the limited success achieved by appellants." (*Id.* at pp. 249-250.)

The court reached a similar conclusion in *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961 (*Kizer*). There, Californians for Responsible Toxics Management (CRTM), a conservation group, filed a complaint for declaratory and injunctive relief, seeking (1) to enjoin International Technology Corporation's (IT) alteration or expansion of a toxic waste facility, (2) an order requiring IT to identify and remedy contamination at the site, and (3) an order requiring the California Department of Health Services (Department) to withhold approval of the facility until IT was in full statutory compliance. (*Id.* at p. 965.) After the complaint was filed, the Department and IT entered into a consent order requiring IT to monitor its existing landfill, remedy leakage from a drum burial area, close inactive ponds, and post a bond. The court thereafter denied CRTM's motion for a preliminary injunction and for summary judgment; after the court denied reconsideration, CRTM stipulated to dismiss the underlying action. (*Id.* at pp. 965-966.)

CRTM moved for an award of $593,000 in attorney fees and costs. The trial court applied a fractional multiplier of 35 percent to the lodestar because of "'the relative lack of success therein'" and awarded CRTM $97,675. (*Kizer*, *supra*, 211 Cal.App.3d at p. 973.) Both sides appealed. As relevant here, the appellate court held that the use of a

fractional multiplier was not an abuse of discretion. It explained: "Because plaintiff's claims probably cannot be easily segregated into successful and unsuccessful ones to which hours can easily be attributed [citation], the trial court's assessment does not lend itself to a single mathematical calculation. We cannot say that a 35 percent fractional multiplier is arbitrary or bears 'no reasonable connection between the lodestar figure and the fee ultimately awarded.' [Citation.]" (*Id.* at p. 975, fn. omitted.)

## II. The Trial Court Did Not Abuse Its Discretion by Applying the Limited Success Doctrine to Reduce Heyen's Attorney Fee Award

The trial court concluded in the present case that Heyen's success was limited, noting that while she claimed to have been misclassified as an exempt employee for each of the 83 weeks she worked at Safeway's Oceanside store, the jury found she actually had been misclassified for only 21 weeks, or about 25 percent of the time claimed. Heyen contends that the court's conclusion was an abuse of discretion because "[t]o prove that Heyen was misclassified during any of the work weeks, in the face of the intransigent defense position, was a magnificent win. The limited success doctrine is simply inapplicable here and it was error to apply it in the context of this case."

We do not agree that reducing the attorney fee award based on Heyen's limited success at trial was an abuse of the trial court's broad discretion. Like the plaintiffs in *Sokolow* and *Kizer*, Heyen did not obtain all her litigation objectives. Initially, she sought overtime pay for her work at the Rancho Bernardo, Oceanside, and Hemet stores. By the time of trial, she limited her claims to time spent at the Oceanside store. Through her witnesses' testimony, she sought to persuade the triers of fact that one could not manage the Oceanside store without performing nonexempt tasks during a majority of work hours during each day that Heyen worked there. (*Heyen I*, *supra*, 216 Cal.App.4th at p. 801.) Indeed, she and her witnesses testified that Safeway's policies virtually *required* exempt employees to do significant amounts of nonexempt work and to work

16

far more than 40 hours per week. (*Ibid*.)[3] Heyen therefore sought overtime for each of the 83 weeks she worked at Safeway's Oceanside store. While the triers of fact agreed with Heyen with regard to some of her work weeks, it apparently rejected her theory that under Safeway's policies, the Oceanside store simply *could not be run* without the assistant manager doing significant nonexempt work and routinely working more than 40 hours per week. The jury and the court therefore awarded Heyen approximately 25 percent of the unpaid overtime she asked for. On these facts, the trial court did not abuse its broad discretion by concluding that Heyen did not achieve all her litigation objectives and, therefore, awarding Heyen less than the total fees she asked for.

Heyen contends that her litigation costs would not have been lower if she had sought unpaid overtime for only 21 weeks, rather than 83 weeks, because Safeway "would have put up the same 'take no prisoners' fight." Perhaps so, but case law is clear that a fee reduction for limited success is appropriate *even if* successful and unsuccessful claims are so closely related that the court cannot separate out attorney time spent on unsuccessful claims. As the *EPIC* court explained, "[T]he trial court may reduce the total fee awarded to the [plaintiffs] if it determines, in the exercise of its discretion, that the relief the [plaintiffs] obtained was limited in comparison to the scope of the litigation as a whole. [Citations.] . . . [W]e note that 'a partially prevailing party is not necessarily entitled to all incurred fees *even where the work on the successful and unsuccessful claims was overlapping*.' (*Mann v. Quality Old Time Service, Inc*. [(2006)] 139 Cal.App.4th [328,] 344.)" (*EPIC*, *supra*, 190 Cal.App.4th at pp. 247-248, italics added.)

Heyen further contends that if we affirm the award of only a percentage of her fees, attorneys will "have a very practical real world disincentive to pursue these actions." We do not agree. As an initial matter, we do not find it obvious that an attorney fee award in excess of $600,000 is a "disincentive" to future representation of

---

[3]     Heyen testified at trial that "'[w]e cannot run the store with what they give us without the manager and assistant manager working hourly like the other hourly employees. It's impossible.' Moreover, she said, the demands of the job required that the manager and assistant manager work '[m]uch more' than 40 hours a week—'[t]hat's the only way we can get it done.'" (*Heyen I*, *supra*, 216 Cal.App.4th at p. 801.)

17

wage and hour plaintiffs. Regardless, our Supreme Court doubtless was aware of this potential disincentive when it held that "'a reduced fee award is appropriate when a claimant achieves only limited success.'" (*Chavez*, *supra*, 47 Cal.4th at p. 989.) As an intermediate court, we are bound to follow Supreme Court precedent. (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Heyen also urges that a "substantial body of law argues that Heyen's fees are <u>not</u> limited due to the amount of damages awarded." *None* of the cases she cites, however, holds that a trial court lacks discretion to reduce fees where a plaintiff recovers significantly less than she sought. Instead, these cases stand for the proposition that a fee award need not be proportional to the damages award, and thus that a trial court may award fees that exceed the plaintiff's substantive recovery. (E.g., *Graciano v. Robinson Ford Sales*, *Inc.* (2006) 144 Cal.App.4th 140, 161 [trial court erred "in calculating a reasonable attorney fee as a percentage of [plaintiff's] settlement recovery"]; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1153, disapproved on other grounds in *Snukal v. Flightways Manufacturing*, *Inc.* (2000) 23 Cal.4th 754 [rejecting defendant's contention that "the attorney fee award was excessive because it was substantially higher than [plaintiff's] recovery."].) While this proposition undoubtedly is a correct statement of the law, it has no application here because the trial court did not purport to limit Heyen's fees to a percentage of her total recovery and, indeed, it awarded fees *more than 20 times greater* than Heyen's damages.

Heyen contends finally that the trial court erred in relying on *Chavez*, *supra*, 47 Cal.4th 970, because that case is "inapposite on myriad bases." There is no question that *Chavez* is distinguishable factually for many reasons, most notably that the trial court in *Chavez* declined to award the plaintiffs *any* of the more than $800,000 in attorney fees they requested. The Supreme Court affirmed, noting that "'[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' (*Serrano v. Unruh*[, *supra*,] 32 Cal.3d 621, 635; accord, *Ketchum v. Moses*[, *supra*,] 24 Cal.4th 1122, 1137.) . . . [T]he trial court [in *Chavez*] reasonably could and presumably did conclude that plaintiff's attorney fee request in the

18

amount of $870,935.50 for 1,851.43 attorney hours was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim.  This fact alone was sufficient, in the trial court's discretion, to justify denying attorney fees altogether." (*Chavez*, *supra*, at pp. 990-991.)

It is true that, in the present case, the trial court did not find either that the attorney fees were unreasonably inflated or that counsel's claimed hourly rates were excessive.  It is also true, however, that unlike the *Chavez* court, the trial court here did not deny Heyen's fee request.  While *Chavez* therefore unquestionably differs from the present case in important respects, it nonetheless stands for the proposition—highly relevant here—that a trial court has discretion to award reduced fees where a plaintiff's success is limited.  And, although Heyen's success was not as limited as Chavez's, it cannot reasonably be contended that Heyen got everything she asked for.  The trial court therefore did not err in awarding her reduced attorney fees.

## SAFEWAY'S APPEAL

Safeway claims the trial court abused its discretion by awarding Heyen excessive attorney fees.  For the reasons that follow, we conclude there was no abuse of discretion.

I.    **Fees Incurred Prior to the Filing of the Second Amended Complaint in December 2006**

Safeway contends that the trial court erred in awarding fees for hundreds of attorney hours worked before Heyen became a putative class representative in December 2006.  Safeway urges:  "While Heyen may have benefited from the knowledge her counsel gleaned in earlier litigation pursued on behalf of others, as a prevailing party seeking fees, she cannot recover for the efforts her counsel made on behalf of others before <u>she</u> engaged them as counsel and <u>she</u> herself became a party in the case."

19

Safeway's argument assumes that work done by plaintiff's counsel prior to December 2006 was incurred for "earlier" (i.e., separate) litigation pursued "on behalf of others." It was not. All of the fees plaintiff's counsel sought were incurred *in the present case*, which was filed and litigated as a putative class action. Safeway cites no authority for the proposition that a trial court categorically lacks discretion to award fees of this character. Moreover, even before Heyen became a putative class representative, she was a member of the putative class, defined as "[a]ll current and former Store Managers, First Assistant Managers and Second Assistant Managers of Safeway Inc. in California, including at Safeway, Vons, Pavilions and Pak'N'Save stores, during the periods from July 11, 1998 through the present, who were classified as exempt and were not paid overtime." As a result, even before her name appeared on the pleadings in December 2006, Heyen was one of the individuals on whose behalf the litigation was pursued.[4] Discovery, motion practice, and other litigation activities performed by plaintiff's counsel were, accordingly, performed for Heyen's benefit, among others.

In support of her motion for fees, Heyen acknowledged that she sought fees for discovery conducted before she was named a putative class representative in December 2006, but she urged that such discovery "was indispensable to prov[ing] [her] claims." The trial court questioned plaintiff's counsel about this issue, specifically asking counsel whether the fees sought for work done before December 2006 were relevant to Heyen's claims. Counsel Brooks assured the court that they were relevant:

"Mr. Brooks: There's a few instances where — for instance, when I laid them out, like for Chris Ratto . . . , who testified at the Heyen trial; Ron Alguire, who testified; Ed Lyons, who was the head of I.E. in Northern California, who I took his deposition, he explained to me how O.R. [operating ratio] works, how these studies are conducted. There are limited things like that. But I personally went through those bills, took out the

---

[4]    Indeed, California law is clear that as soon as a class action complaint is filed, the putative class representatives and class attorneys assume a fiduciary duty to all the members of the putative class. (*Pirjada v. Superior Court* (2011) 201 Cal.App.4th 1074, 1087, citing *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871.)

Knoch and [Ritchey] stuff, anything that pertained to them, and left in stuff that was done prior to Linda Heyen's coming into the case but was used in this trial. [¶] . . . [¶]

"The Court: All right. Let me ask you this: There is an argument in here about fees that are unrelated to the Heyen case, and what you're saying is that all the fees — you know, Mr. Brooks, you went through this — and everything is related to Heyen except for a few discrete incidents. There are a couple of witnesses whose depos and the time for the depositions you do include. Am I right about that?

"Mr. Brooks: Well, yes, Your Honor. Yeah. But it's not that they're unrelated to Heyen. The fees were incurred prior to her coming into the case. But, I mean, at least in two instances off the top of my head, these are people who actually came in and testified at trial, and, you know, that's Mr. Ratto and Mr. Alguire. [¶] . . . [¶] . . . But in addition, I deposed Deborah Conrad, who was the vice president of human resources, [about] what we're calling the 'Conrad Memo,' and that was the written policy on payroll misses . . . . If you miss payroll by more than $250, you're subject to termination, suspension, et cetera. That was an exhibit in the case. I deposed Ed Lyons. Mr. Lyons set out for me how O.R. works, I mean, some real basic information. . . . We went through and I took out stuff that was related only to the class proceedings. I left in stuff that was used at trial, including broader brush stuff, and this is stuff which I'm not going to ask for again should the court award it here today. . . . So, yes, I went through them line by line, Your Honor."

The court accepted counsel's representations and awarded Heyen fees for some (but not all) discovery conducted prior to December 2006.[5] Safeway raises the specter of multiple awards of the same fees, suggesting that the trial court's approach "would allow a plaintiff's attorney who serially sues the same defendant raising similar claims on behalf of different clients to later seek attorneys' fees for some or all of the [fees] incurred in those earlier actions on behalf of others (even if those actions were

---

[5]     Safeway characterizes this discovery as pertaining to "general background information," but that is not what Heyen's attorneys argued or what the trial court apparently concluded.

unsuccessful)." While potentially an issue in future litigation, multiple recovery is not an issue in *this* case because it is undisputed that plaintiff's attorneys have not previously been compensated for the fees they now seek. Moreover, the trial court acknowledged the potential for future duplication and admonished plaintiffs' counsel in its written order that "[s]ome costs unrelated to Heyen will be permitted, but Plaintiff['s] [counsel] . . . will **not** recover these costs in any subsequent matter."

Safeway contends finally that although the trial court recognized that not all fees incurred before Heyen joined the litigation in December 2006 were relevant to her case, it "made no actual reduction in the requested hours for this purpose." We do not agree. Although the court did not specifically reduce the number of hours worked before Heyen became a class representative, it did reduce the overall fee request by 60 percent. We presume that the issue of fees incurred before Heyen joined the litigation was one of the several factors the trial court considered in concluding that a 60 percent reduction was appropriate. (See, e.g., *Taylor v. Nabors Drilling USA*, *LP*, *supra*, 222 Cal.App.4th at p. 1249 ["'In reviewing a challenged award of attorney fees and costs, we presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure. [Citation.] This is in keeping with the overall review standard of abuse of discretion, which is found only where no reasonable basis for the court's action can be shown. [Citation.]'"].)

## II.     Double Counting

Safeway contends that the trial court improperly double counted factors when it awarded attorney fees, urging that, "In determining the unadorned lodestar reasonable hourly rate, the trial court . . . emphasized the 'high degree of competence and skill' required of Heyen's counsel to counter Safeway's 'tenacious defense.' Indeed, this was the only factor (other than the mistaken finding that plaintiff's counsel's rates were 'comparable to the rates charged by defense counsel') identified by the trial court to find the requested 'high' rates . . . to be reasonable and not subject to deduction. . . . [¶] However, having considered this 'higher degree of skill' needed to counter Safeway's

22

'tenacious defense' in setting a 'high (as high as $1,000/hr . . .)' unadorned lodestar rate, the trial court as part of its step two 'adjustments' once again considered the exact same factor as also supporting a 'positive multiplier' adjustment . . . . [¶] Without question, the trial court double counted (both at the lodestar step and at the 'adjustment' step what it viewed as the 'higher skill' needed by Heyen's counsel to counter Safeway's 'tenacious[ly]' litigated defense." (Fn. omitted.)

We do not agree that the trial court improperly double counted any of the factors relevant to an award of attorney fees. Our Supreme Court has explained that the lodestar is "the basic fee for comparable legal services in the community," which then may be adjusted by the court based on factors "including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.) The purpose of the adjustment "is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Ibid*.) A fee enhancement will *not* "inevitably result in unfair double counting or a windfall to attorneys . . . . Under our precedents, the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano* [*v. Priest*, *supra*, 20 Cal.3d 25]. The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." (*Id.* at p. 1138.)

In discussing the enhancements to the lodestar, the Supreme Court has cautioned against double counting, noting that "when determining the appropriate enhancement, a

23

trial court should not consider these factors to the extent they are already encompassed within the lodestar." (*Ketchum*, *supra*, 24 Cal.4th at p. 1138.) Further, the court has said, the factor of extraordinary skill, in particular, "appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar. A more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate. [Citation.] Indeed, the '"reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case."' [Citation.]" (*Id.* at pp. 1138-1139.) However, in appropriate cases, attorney skill can be relevant both in determining a reasonable hourly rate and a lodestar enhancement: "[A] trial court should award a multiplier for exceptional representation . . . when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." (*Id.* at p. 1139.)

In the present case, the trial court did not improperly double count plaintiff's counsel's skill in awarding attorney fees. When it set the lodestar, the trial court noted counsel's skill and experience, but it adopted an hourly rate it found commensurate with other experienced attorneys in the community. In so doing, the court noted that plaintiff's selection of experienced attorneys was reasonable and necessary in light of Safeway's "high-powered legal team." The court then adjusted the lodestar up based on counsel's exceptional representation and the contingent nature of the award. Such adjustments are consistent with the court's guidance in *Ketchum* and are not an abuse of discretion.

### III.   Hourly Rates

Safeway contends that the trial court erred in setting hourly rates of $1,000 per hour for Ian Herzog, $850 per hour for Paul Fine, and $800 per hour for Steven Glick.

24

These rates, Safeway says, "are excessive rather than 'reasonable' as they are <u>not</u> objectively based on 'prevailing market rates' in the local community for individual plaintiff wage and hour cases." Indeed, "there was no objective evidence before the trial court of prevailing rates in the Los Angeles market involving wage and hours cases such as this one, which would support a lodestar award to Heyen's counsel of $800 per hour or more — and particularly an hourly rate of $1,000 an hour, as requested and awarded to attorney Herzog."

We agree with Safeway that there was no evidence before the trial court that attorneys in the relevant market earned $1,000 per hour during any of the relevant years. At most, the evidence suggested that the highest earners in the Los Angeles market billed at hourly rates of $850 or $860 during the relevant years.[6] Thus, had there been no reduction to the lodestar, we might have concluded that the award constituted an abuse of discretion. However, as we have already noted, the trial court reduced the fees requested by Heyen's counsel by a full *60 percent*. By doing so, it effectively awarded a blended hourly rate of just $258 per hour ($603,150 / 2340 hours = $258/hour)—a rate well within a reasonable range.[7]

Although the trial court begins by setting a lodestar based on hours reasonably expended and a reasonable hourly rate, the lodestar figure "'""may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." [Citation.] In short, after determining the lodestar amount, the court shall then "'consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [attorney fee] award so that it is a reasonable figure.'" [Citation.]' (*EnPalm*, *LLC v. Teitler*[, *supra*,] 162 Cal.App.4th 770, 774 . . . , citing *PLCM Group*, *Inc. v. Drexler*[,

---

**6** According to reports submitted in the trial court, Los Angeles-based firms Manatt Phelps and Sheppard, Mullin, Richter & Hampton reported rates for partners ranging from $850 to $540 (Manatt) and $860 to $505 (Sheppard, Mullin).

**7** If the court awarded fees for *fewer* than all the hours claimed, it awarded a somewhat higher hourly rate, but in any event well less than $1,000 per hour.

*supra*,] 22 Cal.4th 1084, 1094-1096.)" (*Ellis v. Toshiba America Information Systems*, *Inc*. (2013) 218 Cal.App.4th 853, 881-882.) Our review, therefore, must be of the award *as a whole*, rather than the unadjusted (or "unadorned") lodestar. Were it otherwise, we would be compelled to reverse a too high lodestar—even if, as in the present case, the trial court had already made appropriate adjustments.

Although we are sympathetic to Safeway's argument that an attorney fee award based on an hourly rate of $1,000 per hour is too high, we do *not* agree that the adjusted award of $603,150 is unreasonable. As Heyen points out, her attorneys accepted this case on a contingent fee basis and thus are entitled to be compensated """"not only for the legal services [they] render[ed] but for the loan of those services. . . .' 'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.'"" [Citation.]" (*Cates v. Chiang* (2013) 213 Cal.App.4th 791, 823.) Further, this litigation involved extensive discovery that lasted many years, and it resulted in a trial at which both sides called many witnesses. The trial court found that the case was hard fought and that plaintiff's counsel displayed a high degree of competence and skill. Under these circumstances, we do not conclude that the attorney fee award was unreasonable.

Our conclusion is strengthened by the fact that, as the trial court noted, Safeway's attorneys billed more hours (2,995 hours versus 2,340 hours) and received greater total compensation ($1,070,000 versus $603,150) than did Heyen's attorneys. This evidence was relevant to the attorney fee award: "'In a contest over what time was reasonably and necessarily spent in the preparation of a case, it is obvious that the time that the opposition found necessary to prepare its case would be probative. Each party must prepare to question the same witnesses, must review the same documents and other evidence, and must anticipate a presentation by the opposition of a complexity related to the facts in issue. Similarly, work on pretrial motions would reflect what volume of work opposing attorneys deemed reasonable.' [Citations.]" (*In re Tobacco Cases I*, *supra*, 216 Cal.App.4th 570, 584-585.)

26

Our conclusion is also strengthened by the deferential standard of review applicable to attorney fee awards. "'The amount of an attorney fee to be awarded is a matter within the sound discretion of the trial court. [Citation.] The trial court is the best judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong. [Citations.] The only proper basis of reversal of the amount of an attorney fee award is if the amount awarded is so large or small that i[t] shocks the conscience and suggests that passion and prejudice influenced the determination.' (*Akins v. Enterprise Rent-A-Car Co.*[, *supra*,] 79 Cal.App.4th 1127, 1134.)" (*In re Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 587.) In light of the 10-year history of this litigation, the $603,150 in attorney fees awarded Heyen's counsel in the present case does not shock the conscience or suggest any passion or prejudice.

## CONCLUSION

In conclusion, we note, as did the Court of Appeal in *Harman II*, that there is a great degree of subjectivity inherent in any attorney fee award. The *Harman II* court expressed it this way: "In this appeal we are confronted with the taxing problem of determining the reasonableness of an attorney fee award that far exceeds the monetary award recovered at the end of protracted and hard-fought litigation. The lodestar method . . . is so fraught with subjective factors that its real-life application is not easily reduced to the mathematical precision the method seems to invite. [Citation.] Application of the lodestar method in this case also comes at a time when the trial court and the parties have the benefit of hindsight of over seven years of litigation. In this era of ever increasing legal fees and costs, few would claim to have the prescient abilities necessary to predict the final outcome of this litigation that started [eight years earlier]." (*Harman II*, *supra*, 158 Cal.App.4th at p. 415.)

These observations are as relevant in the present case as they were in *Harman II*. The trial court's determination of reasonable attorney fees and our review of that award is

27

necessarily subjective, as reasonable minds may differ regarding how many hours were fairly expended in prosecuting this case, what a reasonable hourly rate is, and what degree of success Heyen achieved. Nonetheless, despite the subjective nature of the inquiry, an attorney fee award is statutorily required in this case. Having reviewed the entire record, we conclude that the attorney fee award did not constitute an abuse of the trial court's broad discretion.

**DISPOSITION**

The attorney fee award is affirmed. Each side shall bear its own appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.[*]

We concur:


EPSTEIN, P. J.


MANELLA, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.